124

HAROLD J. GREEN *et al.*, Plaintiffs-Appellees, *v.* INTERNATIONAL BUSINESS MACHINES CORP., Defendant-Appellee.—(INTERNATIONAL BUSINESS MACHINES CORP., Third-Party Plaintiff-Appellee; THE DEPARTMENT OF REVENUE *et al.*, Third-Party Defendants-Appellees; MARTIN S. ABRAMS, Appellant.)—MARTIN S. ABRAMS, Plaintiff-Appellant, *v.* INTERNATIONAL BUSINESS MACHINES CORP., Defendant-Appellee.

First District (3rd Division) Nos. 59401, 60662 cons.

Opinion filed March 4, 1976.—Rehearing denied April 29, 1976.

Joseph & Friedman, of Chicago (Jack Joseph, of counsel), for appellant.

Jack A. Williamson, of Adams & Williamson, of Chicago, for appellee International Business Machines Corp.

Mr. PRESIDING JUSTICE MEJDA delivered the opinion of the court:

Martin S. Abrams, appellant, brought two separate appeals which have been consolidated in this court. In 59401, Abrams appeals from a consent decree entered upon consolidation of three class action complaints filed respectively by Harold J. Green, Larry S. Mayster, and Block, Levy & Becker, plaintiffs-appellees, against International Business Machines Corp. (IBM), defendant-appellee, to recover excess service use taxes collected on transfers of personal property incident to the sale of maintenance services by IBM for business equipment. In 60662, Abrams appeals from an order which dismissed his similar class action suit against IBM on the ground that the cause of action was barred upon the principle of res judicata by the above decree.

Abrams argues on appeal that the consent decree is invalid insofar as it barred recovery of the pre-1970 claims and that the invalidity requires a reversal of the dismissal order entered as to his complaint. As a purported member of the plaintiff class in 59401, Abrams contends (1) the trial court violated the due process rights of the class members in holding that notice of the settlement was not necessary under section 52.1 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 52.1); (2) that plaintiffs-appellees were not proper class representatives for the pre-1970 claimants; and (3) the trial court erred in holding IBM not liable as to the pre-1970 claims because of laches.

The Service Occupation Tax Act (Ill. Rev. Stat. 1971, ch. 120, par. 439.101 et seq.) and the Service Use Tax Act (Ill. Rev. Stat. 1971, ch. 120, par. 439.31 et seq.) establish a dual system of taxation whereby a tax is imposed upon sellers of services who are in turn compensated by collecting and retaining a separate use tax imposed upon purchasers of their services. Section 3 of the Service Use Tax Act (Ill. Rev. Stat. 1971, ch. 120, par. 439.33) provides in relevant part:

"A tax is imposed upon the privilege of using in this State real or tangible personal property acquired as an incident to the purchase of a service from a serviceman. Such tax is at the rate of 4¼% of the *cost price to the serviceman* of the property transferred as an incident to the sale of service prior to October 1, 1969, and at the rate of 4% where the purchase of the service occurs on or after October 1, 1969." (Emphasis added.)

The section was amended, effective August 17, 1971, to further provide:

"If any serviceman collects Service Use Tax measured by receipts or cost prices which are not subject to Service Use Tax, or if any serviceman, in collecting Service Use Tax measured by receipts or cost prices which are subject to tax under this Act,

collects more from the purchaser than the amount of the Service Use Tax on the transaction is, the purchaser shall have a legal right to claim a refund of such amount from such serviceman. However, if such amount is not refunded to the purchaser for any reason, the serviceman is liable to pay such amount to the Department [of Revenue]."

The term "cost price" is defined in the Service Use Tax Act (Ill. Rev. Stat. 1971, ch. 120, par. 439.32); however, the definition does not anticipate instances wherein the serviceman is also the manufacturer of the tangible personal property transferred as an incident to the sale of his service. In the case before us, IBM manufactured the parts transferred to its customers incidental to the maintenance service performed by it on business equipment.

The pertinent facts in 59401 follow. On October 29, 1971, Harold J. Green filed a class action complaint seeking relief from IBM for a class of IBM customers from whom it had collected allegedly excess service use taxes since January 1, 1961, the effective date of the Service Use Tax Act. In April 1972, Larry S. Mayster and Block, Levy & Becker also filed similar class action complaints against IBM. The three complaints were consolidated for trial on May 9, 1972, and IBM then filed affirmative defenses to the consolidated complaints. It alleged that it had collected the service use taxes in good faith and without complaint by its customers; that the proper "cost price" of its parts transferred incident to rendering maintenance services was the price it charged other servicemen for those parts; that it had not been unjustly enriched because all of the monies so collected were paid over to the Department of Revenue in satisfaction of its own service occupation tax liability; and that the plaintiffs were guilty of laches. On December 18, 1972, the trial court filed a memorandum opinion which held that the proper tax base for service use tax purposes was IBM's actual cost of manufacturing its parts and not the price it charged on sales of such parts to other servicemen. The trial court further held that it was not a valid defense to a class action for reimbursement of excessive taxes that IBM had paid over the excess taxes collected by it to the Department of Revenue; and that laches did defeat the plaintiffs' refund claims.

IBM filed a third-party complaint against the Department of Revenue, claiming that to the extent IBM might be held liable to plaintiffs, the Department should refund an equivalent amount. IBM also moved that certain parts of the trial court's order overruling its affirmative defenses be vacated. In a second memorandum opinion filed on February 21, 1973, the trial court held that because IBM had not been unjustly

enriched and because servicemen's refund claims from the Department of Revenue on service occupation taxes were subject to a 3-year limitations period under section 19 of the Service Occupation Tax Act (Ill. Rev. Stat. 1971, ch. 120, par. 439.119), the plaintiffs were barred by laches from recovering amounts collected more than 3 years previously. On April 26, 1973, IBM propounded an interrogatory to the Department of Revenue to define the cost price of self-manufactured parts for service use tax purposes. The Department answered that in cases where IBM manufactured its own parts the proper tax base for the Service Use Taxes was the cost of the materials which IBM purchased and incorporated into such parts.

Subsequently, the plaintiffs moved the trial court for an order approving the class status of the action and defining the appropriate class members. Settlement negotiations were then entered into by the parties and culminated in the trial court's entering, with the consent of all the named parties, a final decree on May 16, 1973. The decree was entered without any notice to the members of the plaintiff class and provided in pertinent part:

*"FINAL DECREE*

These consolidated cases coming on to be heard as a set matter pursuant to Court order for consideration of approval by the Court of the entry of a consent decree in final settlement of the claims asserted by the plaintiffs and the disposition of the issues raised by the pleadings  *  *  *;

The Court hereby finds as follows:

2. While plaintiffs represent a class of all IBM customers in Illinois to whom IBM has transferred tangible personal property as an incident to any maintenance or repair service transaction involving any IBM product serviced by IBM in Illinois, the Court finds that such customers are barred from any relief with respect to transactions which occurred prior to January 1, 1970, and further finds that the class entitled to relief is limited to customers with respect to transactions which occurred on or after January 1, 1970. These consolidated cases were properly brought and maintained as a class action.

6. That IBM will refund the full amount of Illinois service taxes collected from the members of the class during the "refund period" which is hereby determined to be the entire period between January 1, 1970 and June 1, 1973, such refunds to be made within a reasonable time, and to include interest at 6% from the dates of

collection to the date of refund. * * * The amounts of these refunds and all administrative expenses in making them will be paid by IBM.

8. IBM will pay, without making any deduction on account thereof from the refunds to customers provided for in paragraph 6 above, a reasonable fee to the attorneys herein of plaintiffs in an amount determined by this Court.

9. By reason of the above, and under all of the circumstances herein, notice to members of the class is unnecessary as each member shall be entitled to receive an award as great or greater than the amount to which each such member would be entitled if each such member brought an individual action and had judgment awarded in his favor.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1. The above Findings establish that good cause has been shown for excusing, as provided in Section 52.1 of the Illinois Civil Practice Act, the giving of notice to members of the class of this settlement and disposition of a class action.

2. This Court approves settlement and disposition of this class action under the terms set forth in the above Findings, * * *

4. The Court retains jurisdiction herein, for the purpose of allowing a reasonable fee to be paid by Defendant to Plaintiff's attorneys herein and for the purpose of enforcing the provisions of the settlement approved herein. Plaintiffs and Defendant waive any rights of appeal which they may have herein, either under this decree or under any order awarding fees."

Thereafter, on May 31, 1973, Martin S. Abrams filed his class action complaint which similarly charged IBM with the collection of excessive service use taxes. On June 14, 1973, the trial court entered an order in 59401 awarding plaintiffs attorneys' fees of $150,000. On the following day Abrams filed a notice of appeal. On June 17, 1974, Abrams' complaint in 60662 was dismissed on the basis that the consent decree entered on May 16, 1973, was res judicata as to his cause of action. Abrams then filed a separate notice of appeal from the dismissal order. The appeals are consolidated in this court. The three contentions raised by Abrams are inherently interrelated and must be considered together.

Initially, Abrams contends that the due process rights of the members of the plaintiff class in the consent decree were violated as a result of the trial court's holding that notice of the settlement of the class action was

not necessary under section 52.1 of the Illinois Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 52.1) which provides:

"An action brought on behalf of a class shall not be compromised or dismissed except with the approval of the court and, unless excused for good cause shown, upon notice as the court may direct."

Abrams does not challenge the constitutionality of the statute, but only urges that it was improper in the instant decree to invoke the statutory provisions to dispense with notice to the class members. The trial court found "notice to members of the class is unnecessary as each member shall be entitled to receive an award as great or greater than the amount to which each such member would be entitled." The court therein expressly found the terms of the consent decree generously beneficial to all recipient class members to establish the "good cause shown" necessary to excuse notice of the settlement. Whether good cause is shown to excuse notice under the statute is a determination made by the trial court in the proper exercise of its discretion. Abrams' basic objection to the absence of notice is directed to the finding in paragraph 2 of the decree which held that plaintiffs represent *all* IBM customers and that such customers are "barred from any relief with respect to transactions which occurred prior to January 1, 1970"; namely, the pre-1970 claims. The contention thus charges the trial court with an abuse of discretion in finding that good cause was shown to excuse notice to the pre-1970 claimants. This contention must be reviewed with the other contentions raised by Abrams to determine whether the trial court abused its discretion in dispensing with notice to the class members as a whole; that is, inclusive of the pre-1970 claimants.

Abrams contends that the trial court erred in holding that all pre-1970 claims against IBM were barred under the equitable principle of laches. The question of laches need not be reached since the decision in *Hagerty v. General Motors Corp.* (1974), 59 Ill. 2d 52, 319 N.E.2d 5, disposes of Abrams' right to recover and to maintain a class action as to the pre-1970 claims. The court there stated the established rule that in the absence of statute, taxes voluntarily paid, though erroneously, cannot be recovered. The court recognized an exception to the rule to prevent unjust enrichment where a tax-collecting intermediary such as a retailer has received a refund of taxes, the burden of which he passed on to his purchasers, but held the exception inapplicable where the intermediary had paid over the erroneously collected taxes in satisfaction of his own tax liability because no unjust enrichment results. The court stated that under such circumstances the only recourse available to the

original taxpayer is the procedure successfully pursued in *Crane Construction Co. v. Symons Clamp & Manufacturing Co.* (1962), 25 Ill.2d 521, 185 N.E.2d 139, specifically, an injunctive suit by the taxpayer against the intermediary to prevent payment of the taxes to the State.

Here, all service use taxes collected by IBM both prior and subsequent to January 1, 1970, were in turn paid to the State in satisfaction of IBM's service occupation tax liability. As in *Hagerty*, no unjust enrichment accrued to IBM in the transaction; rather, it was the State that was enriched. The only remedy its service customers may have had against IBM, that of an injunctive suit, ceased to be available upon payment over by IBM of the allegedly excessive service use taxes to the State. Moreover, the amendment to section 3 of the Service Use Tax Act which affords the purchaser of service the legal right to claim a refund of excessive service use taxes from a serviceman did not become effective until August 17, 1971. The amendment is therefore ineffective to aid Abrams in the recovery of any pre-1970 claims.

Although rendered during the pendency of this appeal, the decision in *Hagerty* is nonetheless applicable to the instant case. (*Board of Education v. Will County Board of School Trustees* (1974), 20 Ill. App. 3d 218, 313 N.E.2d 471; *Cardin v. Cardin* (1973), 14 Ill. App. 3d 82, 302 N.E.2d 238.) Furthermore, the decision would generally preclude recovery on both the pre-1970 as well as the post-1969 claims. However, recovery provided in the instant consent decree as to the class members having post-1969 claims is not challenged in this appeal, and additionally, is independently based upon the agreement of the parties as confirmed by the consent decree entered by the trial court. (See *Filosa v. Pecora* (1974), 18 Ill. App. 3d 123, 309 N.E.2d 356.) Abrams' prior contention that the trial court abused its discretion in excusing notice of the settlement of the class action would appear to be without merit inasmuch as the pre-1970 claims against IBM are not recoverable as determined in *Hagerty*. While we conclude that no error resulted from dispensing with notice, we need not reach the question of whether the trial court correctly ruled that the class of customers who had pre-1970 claims was legally barred from recovery. The conclusion is resolved by our consideration of the final contention made by Abrams.

■■ The remaining contention raised by Abrams is that the plaintiffs-appellees were not proper class representatives for customers having pre-1970 claims against IBM. Abrams argues that a conflict of interest existed between the plaintiffs-appellees and the holders of the pre-1970 claims. While there is no basis in the record for that argument we do find upon another basis that plaintiffs-appellees were not proper representatives for the pre-1970 claimants. In accordance with *Hagerty*, the named

plaintiffs-appellees individually had no causes of action on the pre-1970 claims against IBM. Any right of action which plaintiffs-appellees may have had terminated when IBM paid the taxes to the State, and it follows that plaintiffs-appellees could not maintain an action in a representative capacity for recovery on the pre-1970 claims allegedly possessed by others. (*Dailey v. Sunset Hills Trust Estate* (1975), 30 Ill. App. 3d 121, 332 N.E.2d 158; *Gaffney v. Shell Oil Co.* (1974), 19 Ill. App. 3d 987, 312 N.E.2d 753; *De Phillips v. Mortgage Associates, Inc.* (1972), 8 Ill. App. 3d 759, 291 N.E.2d 329.) On the other hand, the recovery as to the post-1969 claims is not here challenged; furthermore, it is independently supported by the consent decree entered by the trial court. While a consent decree which is acceptable to the parties themselves as determinative of a controversy and is sanctioned by the court is binding (*Stanley A. Nelson & Co. v. Modular Interiors* (1973), 13 Ill. App. 3d 634, 301 N.E.2d 40 (abstract opinion)), it is fundamental that a judgment entered by consent is binding only on the parties to the record (*Raftery v. Easley* (1903), 111 Ill. App. 413). The recovery as to the post-1969 claims is not challenged; however, the consent decree is not binding on the holders of pre-1970 claims because of the lack of capacity in plaintiffs-appellees to maintain a class action on their own behalf. Since such class members were not before the court either individually or as a class, they are neither entitled to notice of settlement nor prejudiced by the order of the trial court excusing such notice.

■■ If parts of a decree are clearly separable, only that part which is in excess of the authority of the court is void and the rest of the decree is valid. (*Filosa v. Pecora.*) Since the consent decree is not binding on the pre-1970 claims, the provisions of the decree as to such claimants must be reversed and vacated. The remainder of the decree as it applies to the post-1969 claimants is valid.

Abrams has further argued that a reversal of the above consent decree would require a reversal of the order dismissing the class action against IBM. In his complaint Abrams sought recovery for himself and on behalf of the class for post-1969 as well as pre-1970 claims. Although the trial court dismissed the Abrams complaint on motion of IBM on the basis that the decree was res judicata as to the entire cause of action, the decree as here modified is res judicata only as to that portion of Abrams' complaint which sought recovery of post-1969 claims and not as to the pre-1970 claims. However, under the principle that it is the order which is the subject of review rather than the trial court's reasoning, the order may be sustained on any basis appearing in the record. (*Psyhogios v. Village of Skokie* (1972), 4 Ill. App. 3d 186, 280 N.E.2d 552; *Bauscher v. City of Freeport* (1968), 103 Ill. App. 2d 372, 243 N.E.2d 650.) The

record sufficiently sustains the order dismissing Abrams' complaint. As to the post-1969 claims, Abrams' complaint came after the entry of the consent decree and consequently is barred by res judicata. Abrams, as did plaintiffs-appellees, ceased to have any right of recovery after IBM paid the taxes collected to the State, and therefore also necessarily lacked the capacity to maintain a representative action on the pre-1970 claims. (*Dailey v. Sunset Hills Trust Estate.*) Therefore, the trial court did not err in dismissing Abrams' class action complaint against IBM.

Accordingly, the consent decree entered in 59401 is affirmed except for provisions therein as to the pre-1970 claims, which provisions are reversed and vacated. The order in 60662 dismissing Abrams' class action complaint is affirmed.

59401 decree affirmed in part and reversed and vacated in part; 60662 order affirmed.

DEMPSEY and McNAMARA, JJ., concur.